

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

April 18, 2018

**BY ECF**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Marquis Wright*, 15 Cr. 445 (PAE)

Dear Judge Engelmayer:

    The defendant in this case, Marquis Wright, is scheduled to be sentenced on April 25, 2018, having pleaded guilty, pursuant to a plea agreement, to (1) a firearms charge connected to his participation in the murder of Johnny Moore, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2; and (2) a firearms charge connected to a racketeering conspiracy involving 18 Park and a drug trafficking crime involving the distribution of heroin, cocaine base, cocaine, and marijuana, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and (iii), and 2. The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's pre-sentence submission.

    In the plea agreement, the parties stipulated that the Guidelines sentence for Counts One and Two together is 35 years' imprisonment (the "Stipulated Guidelines Sentence"), which is the mandatory minimum required by statute. In its Presentence Investigation report ("PSR"), dated November 1, 2017, the Probation Department agrees that the Guidelines range is the sentence prescribed by statute, namely 35 years' imprisonment. PSR ¶ 135. Probation recommends a sentence of 35 years' imprisonment.

    For the reasons explained in this letter, the Government believes the Stipulated Guidelines Sentence is appropriate in this case.

## BACKGROUND

    As described in the PSR, the Indictment in this case charged twenty-six members and associates of the violent street gang known as "18 Park" with participation in racketeering, narcotics, and firearms offenses between in or about 2006 and July 2016. The PSR articulates in detail the operations of the 18 Park gang. As the PSR explains, 18 Park was a highly territorial

street gang that operated primarily in the vicinity of the Patterson Houses in the South Bronx. (PSR at ¶ 9.) 18 Park members used this territory as a place to sell drugs, turning the area in and around the Patterson Houses into an open-air drug market. (*Id.*)

Wright was one of the leaders of 18 Park. (PSR at ¶ 48.) 18 Park members protected the gang's territory, and asserted its superiority to other gangs in the neighborhood, by carrying and using firearms. Some 18 Park members committed acts of violence in connection with the gang's objectives of protecting its territory and asserting its superiority. Those acts of violence included assaults, shootings, and murders.

Wright directly participated in two murders, and one non-fatal shooting, in connection with his membership in 18 Park. On May 29, 2011, Wright aided and abetted the murder of Johnny Moore. Wright drove the shooter, Wali Burgos, to the vicinity of 2625 Third Avenue, in order for Burgos to shoot and kill a rival gang member. (PSR at ¶ 44.) However, Burgos shot into a crowd and hit Johnny Moore, a 16-year old basketball player, instead of a rival gang member. (*Id.*) Wright then drove Burgos away from the scene. (*Id.*)

Wright also aided and abetted the September 2008 murder of Brandon Howard by serving as a lookout when Jonathan Rodriguez shot and killed Howard. (PSR at ¶ 44.) In addition, in 2009, Wright aided and abetted two other 18 Park members who shot at rival gang members. (PSR at ¶ 46).

Wright was also the primary supplier for 18 Park members who dealt crack cocaine and marijuana. (PSR at ¶ 47). In addition, Wright supplied heroin and cocaine to members of the conspiracy for distribution, including in Massena, New York. (*Id.*)

## ARGUMENT

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3);

the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that the district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.  Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *Rita*, 551 U.S. at 349.  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

   **B. Discussion**

A sentence of at least 35 years' imprisonment is mandatory in this case.  But even if it were not, the Stipulated Guidelines Sentence of 35 years would be reasonable here, under the factors set forth in 18 U.S.C. § 3553.

Most significantly, the Stipulated Guidelines Sentence is warranted given the seriousness of the offense.  18 U.S.C. § 3553(a)(2)(A).  Wright was one of the leaders of 18 Park, a violent street gang.  As the Court is aware from presiding over two trials in this case, shootings were commonplace between 18 Park and rival gangs, particularly the YGz, and those shootings did

tremendous damage to the South Bronx community.  As one of the leaders of 18 Park, Wright played a significant role in furthering and condoning that violence.

In addition, Wright played a critical role in two murders.  Wright drove Burgos—who was only 17 at the time of the murder—to shoot at rival gang members, and that shooting resulted in the death of Johnny Moore, a 16-year old basketball player from the Patterson Houses.  While Wright did not pull the trigger, his involvement in driving Burgos to do this murder was significant, particularly since he was a leader of the gang.  Moreover, this murder happened *after* the murder of Brandon Howard, where Wright acted as a lookout when Jonathan Rodriguez shot and killed Howard at a house party.  As such, by the time of the Moore murder, Wright knew the devastating effects a murder can have on a neighborhood, but he nonetheless participated in this senseless act of violence.  Wright's role in these murders, alone, warrants the Stipulated Guidelines Sentence.

Finally, Wright was a drug supplier, who sold crack cocaine, heroin, cocaine, and marijuana to other 18 Park members.  Wright's drug dealing further contributed to the degradation of the neighborhood.

Separately, a substantial term of incarceration is necessary to deter the defendant and to protect the public from Wright.  Wright repeatedly engaged in criminal conduct as the leader of 18 Park, including murders and drug dealing.  A substantial sentence is therefore necessary to deter Wright and prevent him from resuming his dangerous behavior, until an age when the likelihood of his involvement in violent crimes is significantly reduced.

## **CONCLUSION**

For these reasons, the Government respectfully submits that the Stipulated Guidelines Sentence is warranted.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Max Nicholas/Jordan Estes/Dina McLeod
Assistant United States Attorneys
(212) 637-1565/-2543/-1040

cc:  James M. Roth, Esq.