UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 15 Cr. 445-3 (PAE) |
| MARQUIS WRIGHT, | ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received a motion from counsel for defendant Marquis Wright seeking Wright's compassionate release from Federal Correctional Institution Gilmer ("FCI Gilmer") pursuant to 18 U.S.C. § 3582(c). *See* Dkts. 1177 ("Def. Ltr."), 1219 ("Def. Mem."). The Government opposes this relief. Dkt. 1220 ("Gov't Mem."). For the reasons that follow, the Court denies the motion.

## I.      Background

Wright was a member and an informal leader of the 18 Park gang, a violent gang based out of the Patterson Houses in the Bronx that sold prodigious amounts of narcotics. Gov't Mem. at 1. As a member of 18 Park and in furtherance of its goals, Wright supplied heroin and cocaine to fellow gang members for distribution. And, most seriously, Wright directly participated in two murders. In one, Wright drove shooter Wali Burgos to the scene of the crime, where Burgos shot to kill a rival gang member; his shot missed and hit and killed Johnny Moore, a 16-year-old basketball player. Dkt. 907 ("Sent. Tr.") at 23. In the other, Wright served as a lookout when 18 Park leader Jonathan Rodriguez shot and killed Brandon Howard, in an act of gang retaliation, after Howard had been reported as threatening Wright's life. *Id.*

On August 10, 2017, after several co-defendants had been convicted at jury trials, Wright pled guilty to two counts of a superseding information. Each charged a firearms offense: the first, in furtherance of murder in aid of racketeering, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2; and the second, in furtherance of a racketeering and narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii), 924(c)(1)(C)(i) and 2. *See* Dkts. 815 (S13 Superseding Information) at 1–3, 827 ("Plea Tr.") at 9–10. The offenses carried, respectively, mandatory minimum terms of imprisonment of 120 and 300 months, and these sentences, by law, were required to run consecutively. On April 4, 2018, the Court imposed a sentence of 420 months' imprisonment—*i.e.*, 35 years, the sum total of the mandatory minimum sentences—to be followed by five years' supervised release. Sent. Tr. at 31. To date, Wright, who was arrested in December 2015, has served less than one-fifth of the 35-year sentence. His estimated release date is October 18, 2045.

On March 31, 2021, the Court received a letter motion from Wright seeking early release. *See* Def. Ltr. at 1–2. On September 7, 2021, Wright's appointed counsel filed a memorandum in support. Counsel argues that compassionate release is warranted in light of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), which was enacted in December 2018 and prospectively eliminated the mandatory "stacking" of sentences under § 924(c); the current pandemic and Wright's underlying medical conditions (asthma and sickle cell trait); Wright's youth at the time of the offenses; and Wright's productive activities in prison. *See generally* Def. Mem. On September 14, 2021, the Government opposed Wright's motion. It argues that no compelling and extraordinary reasons support Wright's release and that, even if such reasons were present, release is inappropriate under the sentencing factors set out in 18 U.S.C. § 3553(a). *See generally* Gov't Mem.

## II.   Discussion

### A. Governing Legal Principles

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Originally, § 3582(c)(1)(A) did not permit imprisoned persons to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the FSA, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts. *Id.* at 422–23.

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1(A)–(D). But the Commission has not updated that provision to reflect the First Step Act's amendment to § 3582(c)(1)(A), and its guidance refers only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. Accordingly, the Second Circuit has held that U.S.S.G § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts'

3

discretion to consider whether any reasons are extraordinary and compelling" in such cases.
*United States v. Brooker*, No. 19-3218, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community.[1]  Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at *7.  However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## B. Discussion

### 1. The First Step Act

The FSA, enacted in December 2018, abolished the mandatory "stacking" of sentences for multiple § 924(c) offenses.  It did not, however, make that change retroactive.  FSA § 403; *see United States v. Rodriguez*, 15 Cr. 445 (PAE), 2020 WL 8768320, at *2 (S.D.N.Y. Aug. 18, 2020) (holding FSA "not retroactive to offenses that were final at time of the act's enactment").  The FSA does not dictate whether a district court, in exercising its discretion under the compassionate release statute, § 3582(c)(1)(A), must consider this change in law.  "The Court's

---

[1] Until *Brooker*, this Court applied the Commission's guidance to motions for compassionate release, even when brought by imprisoned persons rather than by the BOP. *See, e.g., United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *Ebbers*, 432 F. Supp. 3d at 428. Consistent with *Brooker*, however, reliance on U.S.S.G. § 1B1.13 is appropriate only in cases initiated by the BOP.

4

discretion is obviously not constrained by the non-retroactive nature of the changes [to certain mandatory minimum sentences in the FSA], nor will the Court blind itself to the First Step Act's sentencing reforms when assessing [the defendant's] application." *See Musa v. United States*, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020); *see also United States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020) ("[The non-retroactive nature of the FSA] does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." (quotation marks omitted)).

Had the FSA been in effect in April 2018, when Wright was sentenced on the two firearms counts to which he pled guilty, he would not have faced a mandatory consecutive sentence of 35 years: 10 years on the first count, followed by 25 years on the second.[2] *See* 18 U.S.C. § 924(c)(1)(D) ("Notwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person."). Instead, Wright submits, the Guidelines would have recommended a sentence of 20 years' imprisonment. Def. Mem. at 4. He argues that the change in the law so as no longer to require stacking of mandatory consecutive sentences presents an "extraordinary and compelling" reason to grant him early release. This, he argues, when viewed in combination with other factors, including the current pandemic and Wright's underlying medical conditions, his youth at the time of the murders, and his productive activities in prison, justifies a sentence reduction.

There is a split of authority on whether the FSA's change in law, by itself, constitutes an "extraordinary and compelling" circumstance under § 3582(c)(1)(A) to justify reducing a pre-

---

[2] At the time Wright was sentenced, the stacking of those two sentences was required by 18 U.S.C. § 924(c)(1)(C)(i).

5

FSA sentence of an offender convicted of a crime which had its mandatory minimum sentence reduced by the FSA. Some courts in this District have held that such a difference alone is not enough. *See, e.g., United States v. Lorenzano*, 03 Cr. 1256 (JFK), 2021 WL 734984, at *3 (S.D.N.Y. Feb. 24, 2021) ("Accordingly, the Court cannot conclude that, standing alone, Congress's recent amendment to § 924(c) constitutes an extraordinary and compelling reason for a reduction to Lorenzano's sentence."); *Musa*, 502 F. Supp. 3d at 812 ("[T]his change in law is not enough, standing alone, to automatically merit Musa's release . . . . [T]he Court concludes that the recent changes in the law support Musa's application, but that discretionary relief is not warranted because Musa has failed to identify additional, individualized factors justifying his release."). At least one court within this District, and some outside of it, however, have held that the FSA's change of law alone justifies relief under § 3582. *See, e.g., United States v. Ballard*, 08 Cr. 62 (JSR), 2021 WL 3285009, at *3 (S.D.N.Y. Aug. 2, 2021) ("The Court therefore holds that the First Step Act's dramatic amendment to section 924(c) constitutes an extraordinary and compelling reason warranting a reduction of Ballard's sentence."); *United States v. Avery*, No. 04 Cr. 243, 2021 WL 949482, at *6 (E.D. Pa. Mar. 12, 2021) ("[T]he disparity in sentences resulting from the FSA's amendment of the Section 924(c) stacking provision alone may constitute an extraordinary and compelling reason under Section 3582."); *United States v. Redd*, 444 F. Supp. 3d 717, 722–24 (E.D. Va. 2020) ("Congress [has concluded] that [§ 924(c)] sentences . . . are unfair and unnecessary," and, as a result, are "extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration.").

Notwithstanding this debate, courts have widely recognized that the FSA's change of law, when combined with other "extraordinary and compelling" reasons, can constitute sufficient grounds to justify a sentence reduction under § 3582. *See, e.g., United States v. McCoy*, 981

F.3d 271, 285 (4th Cir. 2020) ("[T]he severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." (collecting cases)); *Haynes*, 456 F. Supp. 3d at 514 ("[When combined with] the brutal impact of Haynes's original sentence, its drastic severity as compared to codefendant['s] ten-year term, its harshness as compared to the sentences imposed on similar and even more severe criminal conduct today, and the extent to which that brutal sentence was a penalty for Haynes's exercise of his constitutional right to trial . . . the FSA'[s] elimination of the § 924(c) sentencing weaponry . . . is an extraordinary and compelling circumstance warranting relief under § 3582(c)."); *United States v. McDonel*, No. 07-20189, 2021 WL 120935, at *4 (E.D. Mich. Jan. 13, 2021) ("McDonel is eligible for compassionate release because of his harsh sentence—which would not be imposed under the law today—together with his youth and record of rehabilitation . . . ."); *United States v. Pitts*, 94 Cr. 70068, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020), *aff'd*, 829 F. App'x 597 (4th Cir. 2020) ("Congress did not intend the sentencing disparity between defendants sentenced before and after the § 924(c) amendment to constitute a sufficient basis on its own to grant the reduction Pitts seeks. Instead, that factor is only one of many that the court should consider, as set forth in § 3553(a)."). This Court has similarly so concluded. It has held that, when other factors support a sentence reduction, Congress's current view embodied in the FSA of the proper treatment at sentencing of cases involving multiple firearms counts carrying mandatory minimum sentences may also be considered in the § 3582 equation. *See United States v. Robles*, No. 08 Cr. 1114 (PAE), 2021 WL 3524067, at *4 (S.D.N.Y. Aug. 10, 2021).

### 2. Application to Wright

A reduction in Wright's sentence, however, is very clearly not warranted here. And the Court finds his request for release frivolous. That is so for two broad reasons.

First, to the extent that Wright invokes the FSA's abandonment of stacking multiple firearms sentences, Wright's sentences would not have been any lower under the current sentencing regime. Wright faced charges of murder in aid of racketeering that carried a mandatory life sentence. The guilty plea his counsel negotiated spared him a mandatory life sentence, in return for Wright's plea to a determinate sentence of 35 years in prison. There is no reason to assume that, had the parties' plea negotiations occurred after the effective date of the FSA, that the Government would have agreed to drop the most serious charges against Wright without assurance that he would be sentenced to at least 35 years in prison. Wright's argument based on the FSA misleadingly omits the fact that the plea agreement entailing pleas to the two counts of conviction here were made possible only because the pre-FSA sentencing regime gave the Government certainty that Wright would be sentenced to at least 35 years in prison.

In any event, even if the Court had sentenced Wright on the two firearms counts with the greater flexibility afforded by the FSA, the Court would not have imposed a lower sentence. On the contrary, at sentencing, the Court was explicit that given the gravity of Wright's crimes in participating in two murders, the need for just punishment and the other § 3553(a) factors would have compelled the same sentence. The Court stated:

> In reflecting on that sentence, I have instead chosen to ask myself this: Assuming that the Court had the discretion to choose the sentence here[,] what[] would the sentence be and would it likely be in and around the term of 35 years to life? The answer to that question I will tell you is yes. In imposing ordinary 3553(a) factors that I reviewed earlier, and here as it happens they do point to a sentence very much consistent with the ones that the parties have negotiated, that is, a mandatory 35-year sentence.

Sent. Tr. at 22–23. That considered view remains the same today, as the reasons the Court set out at length during Wright's sentencing have not changed.

Second, unlike the defendant in *Robles*, Wright has not identified any "individualized factors justifying his release." *See Musa*, 502 F. Supp. 3d at 812. For the reasons explained, the FSA's change of law is unpersuasive as a reason for a lower sentence in this case. And the other factors Wright seizes upon do not move the needle either.

Wright first notes the COVID-19 pandemic and its impact on the conditions of his confinement. In a number of cases involving defendants with much heightened vulnerability to COVID-19 and who had served the bulk of their sentences, this Court has granted early release pursuant to § 3582(c). The Court and others in this District have set out the reasons for ordering the expedited release of inmates at high risk, whether in the context of temporary releases of inmates held in pretrial or presentencing custody[3] or, as sought here, the compassionate release of inmates serving federal sentences.[4]

---

[3] *See, e.g.*, *United States v. Chandler*, ___ F. Supp. 3d ___, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449, 451–53 (S.D.N.Y. 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63, 67–68 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[4] *See, e.g.*, *United States v. Phillibert*, No. 15 Cr. 647 (PAE), Dkt. 65 at 9–11 (S.D.N.Y. Sept. 1, 2021) (ordering compassionate release into home confinement of defendant who was obese, a former smoker, had not been provided with the use of his inhaler despite suffering from Chronic Obstructive Pulmonary Disease, contracted COVID-19 in prison, and who had served approximately 90% of sentence); *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), Dkt. 2581 at 2, 7–9 (S.D.N.Y. Feb. 1, 2021) (ordering compassionate release of defendant who had

Wright, however, is an unusually undeserving applicant for compassionate release. He

has served a small fraction of the lengthy sentence the Court found necessary under § 3553(a) for

his participation in two murders and other gravely serious crimes in league with 18 Park.[5]  *See*

---

COVID-19 and served over 90% of sentence, and Government conceded that there were
extraordinary and compelling reasons for release); *United States v. Mcrae*, No. 17 Cr. 643
(PAE), 2021 WL 142277, at *2, *5–6 (S.D.N.Y. Jan. 15, 2021) (ordering compassionate release
of defendant who suffered from obesity, hypertension, prediabetes, and hepatitis C, had served
70% of their sentence, was a non-violent drug dealer, and Government conceded that there were
extraordinary and compelling reasons for release); *United States v. Benjamin*, No. 15 Cr. 445
(PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (ordering compassionate release of co-
defendant of Wright's who had asthma and had served nine years of his 10-year sentence);
*United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering
compassionate release of defendant with heightened vulnerability who had served the substantial
majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United
States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering
compassionate release of elderly defendant who had served over half his sentence, suffered from,
*inter alia*, HIV, cancer, and hypertension, and played a low-level role in a drug trafficking
conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26,
2020) (ordering compassionate release of elderly defendant, who had serious medical conditions
and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390
(PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Knox*, No. 15 Cr. 445
(PAE), Dkt. 1088 at 2–4 (S.D.N.Y. Apr. 10, 2020) (same for co-defendant of Wright's who had
served all but seven months of an 88-month sentence); *United States v. Jasper*, No. 18 Cr. 390
(PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant
with an immune-inflammatory disease who had served all but 34 days of a four-month sentence);
*Hernandez*, 2020 WL 1684062, at *3 (same for defendant who had served 17 months of a 24-
month sentence and was scheduled for release in four months).

[5] The Court has denied compassionate release applications by many defendants, including co-
defendants of Wright's, which were made relatively early in their prison terms—even when the
defendant had a health condition indicative of heightened vulnerability to COVID-19. *See, e.g.*,
*United States v. Gomez*, No. 18 Cr. 341 (PAE), Dkt. 46 at 2, 10 (S.D.N.Y. Aug. 17, 2021)
(denying motion for reduction of sentence imposed on defendant who had served only
approximately 40% of sentence and refused to vaccinate himself against COVID-19); *United
States v. Lopez*, No. 16 Cr. 317-22 (PAE), Dkt. 715 at 1–3 (S.D.N.Y. Aug. 11, 2021) (denying
compassionate release motion for defendant who suffered from asthma, where defendant had
served only 40% of sentence and refused to vaccinate himself against COVID-19); *United States
v. Ellison*, No. 18 Cr. 834-9 (PAE), Dkt. 602 at 6, 9–11 (S.D.N.Y. July 7, 2021) (denying
compassionate release motion for defendant who suffered from asthma, where defendant and had
served only 10% of sentence and refused to vaccinate himself against COVID-19); *United States
v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying

18 U.S.C. § 3752(c)(1)(A). As the Court explained at sentencing, various § 3553(a) factors demanded that Wright serve a very long sentence, consistent with the then-mandatory sentence for his offenses of conviction. These included "the nature and circumstances of the offense," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

As the Court explained at length, Wright had led a gang that "turned places that should have been places of refuge like parks, schoolyards and playgrounds into shooting galleries." Sent. Tr. at 26. By "participat[ing] in a plot to murder perceived gang rivals, [Wright was] trying to submit the hold of a very dangerous and toxic gang." *Id.* Wright was also the "primary supplier for 18 Park members who dealt crack cocaine" and "personally sold crack and heroin." *Id.* Given "the mayhem and the murder that [Wright] brought about and the viciousness and violence of the gang [Wright] helped lead," the Court had no confidence "that if at liberty [Wright] would not commit future crimes." *Id.* at 27.

Wright's release today—or at any point materially before the release date dictated by the 35-year sentence the Court imposed, such as the proposal he floats of release after 15 years of imprisonment—would be wildly inconsistent with these factors. It would trivialize the gravity of his offenses, make his resulting sentence far less than just punishment, promote disrespect for the

---

compassionate release motion for active member of 18 Park who had engaged in shootings and had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *see also United States v. Francisco*, No. 19 Cr. 131 (PAE), Dkt. 416 at 1, 5 & n.5 (S.D.N.Y. June 29, 2020) (denying compassionate release motion where defendant had served only 60% of his sentence); *United States v. Denard Butler*, No. 18 Cr. 834-10 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence).

law, dishonor his murder victims and their survivors, and expose the public to an outsize risk of his participating in a new round of murderous violence.

And even if these § 3553(a) factors did not preclude Wright's bid for early release, his invocation of COVID-19 falls flat on the facts particular to him. Wright suffers from asthma. And as he notes, the Centers for Disease Control has opined that persons with "moderate to severe" asthma[6] are at high risk of serious illness if they contract the disease. But Wright's medical records do not indicate that he suffers from a "moderate to severe" case. Gov't Mem. at 4 (citing Ex. G). Wright's records indicate that he uses his prescribed albuterol inhaler to regulate his asthma approximately four times per week, unlike the daily usage consistent with moderate and severe cases of asthma. *See* Def. Mem. at 11; *United States v. Harris*, No. 16 Cr. 851 (VSB), 2020 WL 4699044, at *4 (S.D.N.Y. Aug. 12, 2020) ("Persistent-moderate asthma manifests itself in daily symptoms, daily use of short-acting beta agonist use for symptom control, and some limitation on normal daily activity. Persistent-severe asthma manifests itself in symptoms throughout the day and night, short-acting beta agonist use for symptom control several times a day, and extreme limitation on daily activities.") (citations omitted).

Wright also invokes his sickle cell trait as an ostensible basis for release. But although some courts have recognized that individuals with that affliction could experience complications if diagnosed with COVID-19, *see, e.g.*, *United States v. Thompson*, No. 07 Cr. 30010 (SEM), 2020 WL 3470301, at *3 (C.D. Ill. June 25, 2020), the Government rightly notes that the CDC has not identified having sickle cell *trait*—as opposed to sickle cell *disease*—as a risk factor that

---

[6] *See People with Moderate to Severe Asthma*, Ctrs. for Disease Control and Prevention (Mar. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

would increase one's risk for severe COVID-19 illness. *See United States v. Clarke*, No. 16 Cr. 781 (RJS), 2021 WL 1948492, at *2 (S.D.N.Y. May 14, 2021) ("Thus far, the CDC has identified only sickle disease, not merely carrying the trait, as increasing this risk.").[7]

Further exposing Wright's claim to fear adverse consequences from COVID-19 as contrived, he has long had the opportunity to receive a COVID-19 vaccine, which would have dramatically reduced the risk the virus presented to him, but he has refused to accept it. Gov't Mem. at 4. Actions have consequences. Wright cannot reasonably claim that his increased risk exposure to COVID-19 warrants a sentence reduction when he has declined to take the one action that—incarcerated or not—would materially reduce the risks to him from COVID-19. *See, e.g., United States v. Bullock*, No. 18 Cr. 528 (JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) (noting that defendant "cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine").

Wright's other arguments do not establish extraordinary and compelling reasons for release, and are easily put aside. Wright points to his youth at the time of his offense and the steps towards rehabilitation he claims to have taken since his incarceration. Def. Mem. at 7–8. These factors have a place in evaluating motions under § 3582(c). *See, e.g., United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6 (considering defendant's maturation since commission of offense as a teenager, in combination with other factors, including prison conditions during pandemic, supported early release after service of nine years of a 10-year sentence). But they do not carry the day here—or come remotely close. Wright's age at the time

---

[7] *See also People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

of his offenses is not news. It was known to the parties in negotiating the plea agreement and to the Court in imposing sentence. *See* Sent. Tr. at 9–10, 22–23. And although Wright's rehabilitative efforts in prison are commendable, the Court took his presentence efforts into consideration at sentencing. *Id.* at 29. In any event, absent compelling reasons to materially reduce his sentence, Wright's steps towards self-improvement are insufficiently weighty to offset the powerful reasons for sentencing him, as a participant in two murders, to 35 years in prison. *See United States v. Cueto*, No. 11 Cr. 1032-80 (PAE), 2021 WL 621188, at *5 (S.D.N.Y. Feb. 17, 2021).

For all these reasons, the Court finds the § 3553(a) factors incompatible with a reduction of his sentence in this case. The Court accordingly denies Wright's motion for compassionate release or for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

Paul A. Engelmayer
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 13, 2022
       New York, New York

14